CELESTINO VILLARÁN, Plaintiff and Appellant, *v.* LOÍZA SUGAR COMPANY, Defendant and Appellee.

No. 4696. Argued November 18, 1930.—Decided May 31, 1932.

*E. López Tizol* for appellant. *Jaime Sifre, Jr., Diego O. Marrero,* and *Horacio Franceschi* for appellee.

This was an action of damages wherein the complaint alleged specific acts of negligence on the part of the defendant in that a train managed by it was being run at a high speed with wagons in front of the engine and that the track for various reasons was in bad condition, causing the derailment of the train. On a motion for nonsuit the court held in effect that the plaintiff had failed to prove any grounds of negligence, specifically saying that it was not shown that the train was being run at a high speed or that the track was in bad condition, and that no duty between the defendant and the plaintiff had been shown.

On the 27th of March, 1930, this Court affirmed the judgment of the District Court of San Juan. 40 P.R.R. 712. The plaintiff filed a motion for reconsideration which we granted more or less on the theory that the doctrine of *res ipsa loquitur* might be applicable.

The record does not disclose in any form that the doctrine of *res ipsa loquitur* was raised in the court below. At the close of the plaintiff's evidence the defendant moved for a nonsuit. From the statement of the case and bill of exceptions it appears that the plaintiff opposed the motion because the court had before it the admissions of the defendant and some evidence. The plaintiff went on to say that the court could weigh one and another and from the admissions and the evidence determine whether there was a cause of action or not. The statement of the case does not show that the plaintiff indicated to the court what these admissions were. The court thereafter said that the principal matter relied upon was the eighth paragraph of the complaint which freely translated reads:

"That on information when at said time the said train was passing the place, at Loíza, Puerto Rico, known by the name of 'Pabón Siding,' and due exclusively to the fault and negligence of the defendant and its employees, two or three of its wagons went off the track

owing to its great speed upon passing the said place where there was a siding. The train had cars in front of the engine. The track was in bad condition and rested on loose wooden planks without the proper clamps or pins to hold the rails down; the lever was slack and hard to handle for switching off and on the trains; that in such accident two or three cars were overturned one of them being that on which the said minor and other people were riding, the aforesaid minor Carmelo falling under one of them and receiving knocks and bruises of such nature that he died almost instantaneously.''

The court proceeded to discuss the specific acts of negligence alleged in the complaint and decided that the plaintiff had failed to prove any act of negligence.

As we have said, there is nothing in the record to show what the admissions relied upon were or that the plaintiff was invoking the doctrine of *res ipsa loquitur*.

We are far from asserting that the doctrine of *res ipsa loquitur* may not be relied upon without specific averment to that effect. What we do hold is that in a trial when the plaintiff relies on specific acts of negligence and the defendant comes into court prepared to defend against these specific acts of negligence, the plaintiff in all fairness should take some step to show that he does not rely exclusively on the specific averments of negligence but on the doctrine of *res ipsa loquitur*. This is an application of the general rule of the adjective law that a defendant should have notice and a hearing.

If there had been no opinion of the court showing that the judge was only discussing specific acts of negligence or if the opinion disclosed a discussion by the court of the doctrine of *res ipsa loquitur,* we could safely assume that the plaintiff presented his theory to the court. However, as the law requires the judge of the district court to give the reasons for his decision, and he discussed only the specific negligence, there is a presumption, if not a certainty, that the question of *res ipsa loquitur* was never presented to the District Court of San Juan. Let us assume, however, that the said doctrine was invoked in the court below.

There is a strong current of authority to the effect that despite averments of specific acts of negligence on the part of the defendant a plaintiff may still rely on the doctrine of *res ipsa loquitur*. Numerous authorities can be found to the contrary. We shall assume that the plaintiff had a right to raise the question of *res ipsa loquitur* and shall defer for a more appropriate case the rule to be adopted in this jurisdiction.

Section 1217 of the Civil Code provides:

"Presumptions are not admissible, except when the fact from which they are to be deduced is fully proven."

Therefore, it was incumbent upon a plaintiff, if he was relying on the doctrine of *res ipsa loquitur,* to show the preliminary facts which would have placed him in a position to invoke the doctrine. The strongest and most typical case for the application thereof is when the person killed or injured is a passenger on the train of a common carrier and an accident occurs. Therefore, if the derailment of the train is relied on, the plaintiff must show that he was duly a passenger and that the defendant was in fact a carrier in the public sense in which the word is used. Clearly, if a man transports only his own merchandise within his property or property under his control he is not a carrier.

There was no averment or proof that the defendant was a common carrier. On the contrary, the specific averment of the fifth paragraph of the complaint was that the Loíza Sugar Company was the owner of a train propelled by steam which made trips between Carolina and beyond Río Grande, approaching Mameyes and other places with various other branches. This is not the averment that the defendant is a common carrier of passengers or even of freight or that its train has any relation to the public.

The cited paragraphs of the complaint and other parts thereof show that the train belonged to the defendant and there is a presumption that it ran over property belonging

to or under the control of the defendant. If there was any question as to whether the train ran over public roads or was a public carrier, the burden was on the plaintiff to show it. In the construction of pleadings any fact in no way alleged must be taken against the pleader, especially if there is no evidence tending to show such fact.

This was not a case devoid of proof. Celestino Villarán, the plaintiff in this case and the father of the child who was killed in the accident, took the stand. He specifically testified to some, if not all, of the acts of negligence set up in the complaint. He showed himself thoroughly familiar with the premises where the accident occurred. He testified that the accident occurred on a switch. The switch, it necessarily appears, was a branch of the main line which the witness said ran from the factory of the defendant to the outmost cane that the defendant had. The witness said that the accident happened upon reaching the switch and that there was a curve where the cars entered to fetch the cane belonging to the central, and that the curve went sometimes in one direction and sometimes in another. There was a good deal of testimony, a little of it vague, all to the effect that the defendant had a main line running up to the central itself and with various branches to get the outmost cane under the control of the defendant. The necessary inference from all this testimony is that the train was used for the purposes of the defendant in conducting cane.

The whole evidence tended to exclude the idea that the defendant was a common carrier of passengers.

The mere use of the word "train" does not show that the defendant is a common carrier. He may use such train, as frequently happens in Puerto Rico, exclusively for the transportation of his agricultural products. The word *"tren"* in Puerto Rico originally was almost exclusively limited to public vehicles, but we know it to be a fact and we think we can take judicial notice thereof that in Puerto Rico a very

great part of the factories, if not all of them, run private railway trains for the transportation of their sugar cane.

Likewise it was not alleged or shown that the son of the plaintiff had any right to be on the train or that any duty, nexus or contractual relation arose between the defendant and the son of the plaintiff other than to avoid injuring him wantonly or maliciously. We are not of course discussing the cases where a plaintiff is in a public place and is struck by a falling object, or any other acts where the defendant is in a better position to explain than the plaintiff, because in this case if the doctrine is to be invoked at all the recovery must be on the theory that the defendant was a carrier of passengers. We are not for the moment considering cases where an invitation to ride or the like proceeds from a defendant. Here the plaintiff proved no fact or set of facts that would throw a duty on the defendant to explain the accident.

The whole matter is covered more or less by 45 C. J. 1208, section 776, as follows:

"According to the prevailing, if not unanimous, view the application of the *res ipsa loquitur* rule is not restricted to cases involving a breach of duty to use care growing out of a contractual obligation, but applies to actions sounding in tort where the parties stand in no particular relation to each other and where the injuring party was bound to the exercise of ordinary care only. Originally, however, the application of the doctrine was considered to be limited, at least under that construction of the doctrine which permitted the inference of negligence to be drawn from the mere happening of an accident or injury, to cases where a contractual relationship existed between the parties, as in the case of a common carrier or bailee, and defendant was under an absolute duty or obligation to plaintiff approximating that of an insurer. However, although the rule is said to be more frequently applied in cases involving the special relationships mentioned than in other cases of negligence, it has been held that there is no foundation in authority or reason for the rule as the presumption originates and depends upon the nature of the act and the circumstances and character of the occurrence and not on the nature of the relations between the parties, except indirectly

in so far as that relation defines the measure of duty imposed on defendant.''

There was no showing, as ordinarily arises where the doctrine is applied, that the son of the plaintiff was in a place where he had a right to be. The answer of the defendant strongly denied that the son of the plaintiff had a right to be on the train, but insisted that he was an intruder who went on the train against the express will of the company, and alleged that the train was not devoted to the transportation of passengers but was a private railway for the transportation of sugar cane and materials in connection with the business of the central. Naturally, in a motion for nonsuit none of the averments of the answer can be considered as proved, but the answer may be considered to show the issues. Thereunder the plaintiff was bound, if the doctrine was available, to show that his son was in a place where he had a right to be.

If the plaintiff had shown that his son had been invited on the train or that the families of employees of the defendant had with the consent of the company been suffered to ride on the train, a different case would have been presented.

In the discussion of the motion for nonsuit the District Court of San Juan said that it had not been demonstrated that the defendant and its employees were negligent by the mere fact that the cars were derailed and that the death of the child of the plaintiff happened. This Court on appeal repeated the statement of the court below. Said statement is reported in the syllabus of the case as follows:

''Where a train goes off the track and it is shown that said train was being operated by employees of the defendant within the scope of their employment and that it went off the defendant's own track, such circumstances are not sufficient ground in themselves for the implication or presumption of negligence on the part of defendant (*res ipsa loquitur*).''*

---

* NOTE.—The English version of the cited headnote was subsequently amended. See 40 P.R.R. 712.

This syllabus is liable to be misunderstood unless explained. If a train is a carrier of passengers and is derailed, any passenger may invoke the doctrine of *res ipsa loquitur*. However, before he may invoke such a doctrine he must show that he was a passenger, or what amounts to the same thing for our purposes, that the defendant is a carrier of passengers. As there are trains, especially in Puerto Rico, which are not carriers of passengers, but distinctively private, the mere derailment of a train is not a reason for invoking the doctrine. The syllabus should have said: "Where there is no showing that the defendant is a carrier of passengers, the mere derailment of a train belonging to it is not proof of negligence, etc.," or words to that effect. If the word "train" is taken in its most general sense as used today a mere derailment is not proof of negligence.

If a car runs off the track and nobody suffers, no question of negligence in the legal sense arises. For the word "negligence" to be used an obligation must arise and of course an obligee. A plaintiff must show that the defendant owed him a duty.

Perhaps it would suffice to say that neither the complaint nor the evidence tended to show negligence in the defendant, but the parties in their briefs discussed the applicability of the doctrine of *res ipsa loquitur*, and, therefore, we have discussed it under the possibilities of this case.

The judgment should be affirmed.